IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 16, 2004

## VINSON D. MASON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-C-1789     Steve R. Dozier, Judge**

---

### No. M2004-00084-CCA-R3-PC - Filed February 9, 2005

---

The petitioner, Vinson D. Mason, pled guilty in the Davidson County Criminal Court to second degree murder and received a sentence of eighteen years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel. The post-conviction court denied the petition, and the petitioner now appeals. Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Vinson D. Mason.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Amy H. Eisenbeck, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The petitioner was originally indicted on charges of first degree murder and especially aggravated robbery. After plea negotiations, the petitioner ultimately pled guilty to second degree murder and received an eighteen year sentence. At the plea hearing, the State recited the following agreed facts as the basis for the petitioner's plea:

> Facts would've shown that the victim, Mr. James Fain, along
> with a witness, Paul Smith, were in the area of Charlotte and

Sixteenth Avenue, attempting to purchase drugs, when they approached the [petitioner].

The [petitioner] asked the victim what he had, and the victim produced nine dollars. At that time the [petitioner] asked the victim to give him the money, and the victim refused. An altercation took place. Then the [petitioner] produced a handgun and shot Mr. Fain once and fled.

Witness Paul Smith later picked the [petitioner] out of a photo lineup. Several other witnesses saw the shooting, but indicated they did not see the shooter's face.

A friend of the [petitioner], however, Kevin Byrd, gave a statement to the police indicating he saw the [petitioner] right after the shooting, that he was in possession of a handgun and stated to him that he had just shot a man.

Subsequently, the petitioner filed for post-conviction relief, alleging that he received the ineffective assistance of counsel. At a hearing on the petition, the petitioner stated that he had been facing a charge of first degree murder. His case began in juvenile court, and counsel represented him at the juvenile transfer hearing. Witness Paul Smith testified at the transfer hearing, but the petitioner could not recall the substance of Smith's testimony. Additionally, after the petitioner's case was transferred to criminal court, a suppression hearing was held. Again, Smith testified regarding the shooting, but once again, the petitioner could not recall the contents of the testimony.

The petitioner recalled that during representation, counsel met with him on three or four occasions, which meetings lasted five or six minutes. Counsel told the petitioner that if he went to trial, he would receive a life sentence. The petitioner maintained that counsel never showed him discovery materials, nor did she discuss any aspects of the case with him. Counsel also did not inform the petitioner that Smith had a criminal record. The petitioner recalled that counsel had hired a private investigator and that the investigator spoke with the petitioner on one occasion.

The petitioner claimed that counsel discussed the plea agreement with him for thirty minutes immediately prior to the entry of the plea. The petitioner testified that he understood portions of the plea; however, he did not understand that he would have to serve one hundred percent of his sentence. He was under the impression that he could obtain "good time" to gain early release. The petitioner admitted that during the guilty plea hearing, he told the trial court that he understood his plea and had no complaints about counsel's performance. However, he stated that he had been lying to the trial court.

Contrary to the petitioner's testimony, counsel testified that she had multiple meetings with the petitioner prior to his guilty plea. Counsel stated that the shortest meeting lasted thirty minutes

-2-

and several meetings lasted over one hour. Counsel asserted, "I spent a lot of time familiarizing . . . myself with the facts of the case. In addition to meeting with my client, I interviewed all the witnesses I could contact." Counsel reviewed all discovery materials. She also hired a private investigator to talk with the petitioner and to canvass the neighborhood where the crime was committed to uncover other potential witnesses. However, the investigation of the neighborhood proved fruitless. Counsel related that Smith's previous criminal convictions were for misdemeanor offenses which could not be used to call his credibility into question. Further, counsel explored a theory of defense involving a ricocheted bullet, which theory was discounted by the medical examiner.

Counsel stated that she had thoroughly discussed the plea agreement with the petitioner several times prior to the entry of the plea. The petitioner read the plea documents and asked questions regarding the agreement and his case. Counsel opined that the petitioner understood the plea and the plea process. In fact, prior to the instant plea, the petitioner stated that he wanted to accept an offer proposed by the State which required him to plead guilty to second degree murder in exchange for a twenty-two year sentence. Counsel persuaded the petitioner to wait for a better offer. Relating to the plea offer, counsel recalled "telling [the petitioner] that second-degree murder is not a parolable offense and explaining what that meant; explaining that he could get a fifteen-percent reduction in his sentence, but that it would be up to him to do the things necessary to get that deduction." When the sentence of eighteen years was offered, counsel again "explained to him that it wasn't guaranteed that he would earn [good time] credits for an earlier release date, but it would be up to him to do that. I wanted to make it very clear to him that it wasn't absolute." Counsel carefully explained to the petitioner that under no circumstances would his sentence be reduced by more than fifteen percent.

At the conclusion of the post-conviction hearing, the post-conviction court denied the petition for post-conviction relief. The post-conviction court specifically credited the testimony of counsel. The court found that she had completely investigated the case and informed the petitioner regarding the case. The petitioner appeals this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence.[1] See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses,

---

[1] In his appellate brief, the petitioner contends that he must "prove his case by a preponderance of the evidence." However, since the inception of the 1995 Post-Conviction Procedure Act, petitioners have been required to prove claims by clear and convincing evidence.

the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

On appeal, the petitioner particularly complains that counsel was ineffective because she failed to advise him of the details of the sentence he would receive upon pleading guilty, failed to explain the case against him in a specific fashion, and did not allow the petitioner to see and hear the evidence against him. In denying the petition, the post-conviction court specifically accredited the testimony of counsel. The post-conviction court found that counsel thoroughly investigated the petitioner's case and advised the petitioner of the details of the case. Moreover, counsel more than adequately explained to the petitioner the strictures of his plea. The evidence does not preponderate against these findings. Therefore, we conclude that the petitioner failed to demonstrate that counsel was deficient or that he was prejudiced by any alleged deficiency. This issue is without merit.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-4-